USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/09/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:                                                                    14-MD-2543 (JMF)
                                                                          14-MC-2543 (JMF)
GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To All Actions*                                    MEMORANDUM OPINION
                                                                          AND ORDER
------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

**[Regarding Plaintiffs' Motion for Reconsideration and/or Clarification of the Court's Order Dismissing the Claims of "Pre-Recall Plaintiffs"]**

In an Opinion and Order entered on June 30, 2017, familiarity with which is assumed, the Court granted in part and denied in part a partial motion to dismiss that Defendant General Motors LLC ("New GM") had filed with respect to the Plaintiffs' Fourth Amended Consolidated Complaint ("FACC") in this multidistrict litigation ("MDL"). *See In re Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF), 2017 WL 2839154 (June 30, 2017). The Court's 129-page Opinion and Order addressed a multitude of complex issues, including one narrow but important one that the parties had addressed only briefly in their memoranda of law: Whether Plaintiffs who had sold, traded in, or returned their vehicles prior to the recalls of those vehicles that began in February 2014 ("Pre-Recall Plaintiffs") had valid claims for economic loss. The Court held that they did not, on the theory that a plaintiff who had resold her car before any recall was announced could not have suffered economic loss damages because "the then-unknown defect could not have affected the resale price." *Id.* at *10.[1] Plaintiffs now move for

---

[1] Although irrelevant for present purposes, the Court ultimately granted the Pre-Recall Plaintiffs leave to amend on the ground that some of them might be able to "plead and prove damages in the form of out-of-pocket expenses and lost time" — for example, by alleging payment for defect-related repairs prior to disposing of a vehicle. *Id.*

reconsideration of that one aspect of the Court's Opinion and Order. (Docket Nos. 4256 & 4257 ("Pls.' Mem.")). For the reasons stated below, Plaintiffs' motion is GRANTED.

Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (internal quotation marks omitted). "The major grounds justifying reconsiderations are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "It is well established that the rules permitting motions for reconsideration must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [C]ourt." *SOHC, Inc. v. Zentis Food Sols. N. Am., LLC*, No. 14-CV-2270 (JMF), 2014 WL 6603951, at *1 (S.D.N.Y. Nov. 20, 2014) (internal quotation marks omitted). Ultimately, though, a district court "has broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000).

In light of this stringent standard, New GM's argument that Plaintiffs' motion should be rejected as an improper attempt to relitigate an issue they lost has considerable force. (Docket No. 4328 ("New GM Opp'n"), at 1-4). After all, New GM explicitly sought to dismiss the claims of the Pre-Recall Plaintiffs for lack of damages (Docket No. 3578 ("New GM MTD Mem."), at 23), and Plaintiffs responded to that argument — albeit in a single sentence relegated to a footnote. (Docket No. 3661, at 24 n.17). Additionally, the Court is largely unpersuaded by

2

Plaintiffs' arguments on the merits (as it was by the footnote in Plaintiffs' original memorandum of law). They contend, for instance, that there is an "inconsisten[cy]" between the Court's observation that any injury under the benefit-the-bargain theory occurred at the time of sale and its holding that Plaintiffs who disposed of their vehicles prior to New GM's recalls suffered no damages. (Docket No. 4344, at 8). But a plaintiff who is *injured* at one point in time by a defendant's conduct does not necessarily suffer cognizable *damages* at that same time for purposes of an economic loss claim. Plaintiffs also assert that they "intend to prove, through expert testimony and otherwise, that the Pre-Recall Plaintiffs" did suffer damages. (Pls.' Mem. 5). But to the extent that something is an element of a claim (more on that in a moment), it does not suffice for a plaintiff to merely assert in conclusory fashion — let alone in a memorandum of law rather than the complaint itself — that the element could be, or will be, satisfied down the road; instead, a plaintiff must allege "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Most importantly, even now, Plaintiffs do not articulate a coherent theory of how a plaintiff who bought a vehicle with a concealed defect and sold the same vehicle before the defect was revealed can logically, if not legally, prove that he or she suffered damages.[2]

That said, Plaintiffs' motion prompted the Court to take a closer look at the different states' laws governing the legal claims at issue (something it obviously should have done in the first instance, even if the parties' briefing failed to point the way) and, upon reflection, the Court

---

[2] Upon reflection, the Court imagines that some Pre-Recall Plaintiffs could conceivably show that their cars manifested defects and that they disclosed those defects (or the fact that the vehicles had undergone repairs) to prospective buyers, causing a decrease in the resale value even though New GM had yet to announce the recalls. Notably, however, Plaintiffs do not raise that argument even in their reconsideration motion papers.

concludes that it was too hasty in holding that the Pre-Recall Plaintiffs' claims failed across the board. That is because, for purposes of at least *some* claims in *some* states, the law does not appear to require a plaintiff to allege damages in order to survive a motion to dismiss. *See, e.g.*, *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996) (holding that under the Illinois consumer fraud act, a plaintiff need only allege (1) a deceptive act or practice by the defendant, (2) that the defendant intended the plaintiff to rely on that deception, and (3) that the deception occurred in the course of trade and commerce, even though common law fraud requires a plaintiff to plead damages); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1099 (S.D. Ind. 2001) (concluding that, under Michigan and Tennessee law, a breach of implied warranty claim has "no requirement that [p]laintiffs demonstrate any injury to their person or property as a result of the breach, but only that they purchased an unmerchantable product"), *overruled on other grounds by In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002); *Grant v. Bridgestone Firestone Inc.*, 57 Pa. D. & C. 4th 72 (Pa. Com. Pl. 2002) (concluding that "ascertainable loss" under the Pennsylvania consumer protection statute is satisfied "[w]henever a consumer has received something other than what he bargained for," even where "damages are not easily quantified or where a claim has failed to quantify the damages suffered" (internal quotation marks omitted)). Similarly, for some claims in some states, the law appears to allow for the recovery of nominal damages "where a party has demonstrated liability but is unable to prove the amount of damages incurred." *Lima LS PLC v. PHL Variable Ins. Co.*, No. 12-CV-1122 (WWE), 2013 WL 3327038, at *10 (D. Conn. July 1, 2013) (Connecticut law). Where that is the case, a court cannot, in ruling on a motion to dismiss, "determine as a matter of law that [the] plaintiff's claim fails for lack of damages." *Id.*; *see also Iannuzzi v. Wash. Mut. Bank*, No. 07-CV-964 (JFB) (WDW), 2008 WL 3978189, at *11 n.8

4

(E.D.N.Y. Aug. 21, 2008) ("[T]he issue of the nature and scope of any damages to which plaintiffs may be entitled cannot be resolved at the motion to dismiss stage of the litigation.").

This lax approach is by no means universal. *See, e.g.*, *Todorov v. Bank of Am., N.A.*, No. 14-CV-1028, 2014 WL 5465466, at *2 (N.D. Ill. Oct. 27, 2014) (dismissing a common law fraud claim under Illinois law for failure to "adequately allege damages," a necessary element of that claim); *House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*, No. 13-CV-519 (RJS), 2014 WL 1383703, at *10-11 (S.D.N.Y. Mar. 31, 2014) (dismissing a breach of contract claim under New York law where the complaint merely "assert[ed], in conclusory fashion, that th[e] loss caused 'financial harm'" but "allege[d] no *facts* showing that [the plaintiff] bore any of the loss"); *Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp. 2d 659, 662 (W.D. Wis. 2009) (noting that, to prevail under the Wisconsin consumer protection statute, a plaintiff must show a misrepresentation by the defendant that "materially caused a pecuniary loss"); *Johnson v. Jos. A. Bank Clothiers, Inc.*, No. 13-CV-756, 2014 WL 64318, at *9-10 (S.D. Ohio 2014) ("[T]hose facts do not sufficiently allege actual injury resulting from the violation" because, "[u]nder Ohio law, actual injury is independent of a [statutory] violation and both must be adequately alleged in a class action . . . ."). But the point is that the Court painted with too broad a brush in holding that *all* claims of *all* Pre-Recall Plaintiffs in *all* states fail as a matter of law (absent allegations of out-of-pocket costs or "lost time") because they cannot plausibly allege a theory of economic loss damages. *See In re Gen. Motors*, 2017 WL 2839154, at *10. Instead, the Court should have rejected New GM's argument for dismissal of the Pre-Recall Plaintiffs' claims for much the same reason that it rejected New GM's "categorical" argument for dismissal of Plaintiffs' "lost time" claims, and either examined New GM's argument on a state-by-state and claim-by-claim

5

basis or deferred it to "another day — either in connection with motions for class certification or dispositive motions examining the laws of each applicable state." *Id.* at *8.

The question presented here, of course, is not whether the Court should have reached a different decision in its prior Opinion and Order. Instead, it is whether Plaintiffs should be granted reconsideration even though they failed to make the foregoing argument themselves in their original motion papers (and, to some extent, do not even make the argument in their reconsideration motion papers). In other circumstances, the Court would almost certainly answer that question in the negative. But given the unique circumstances presented in this MDL proceeding, the Court concludes that allowing its previous decision regarding the Pre-Recall Plaintiffs to stand would indeed result in a "manifest injustice." *Terra Sec. ASA Konkursbo*, 820 F. Supp. 2d at 560. The Court's decision on the validity of the Pre-Recall Plaintiffs' claims affects untold numbers of Plaintiffs, including many whose states were not at issue in New GM's last motion to dismiss and many who, for the reasons explained above, may well have valid claims under their applicable state law. Yet, no doubt due to the practical constraints of briefing scores of issues under the laws of eight different jurisdictions, the amount of attention devoted to the issue in the parties' initial briefs was inversely proportional to its importance. At bottom, the magnitude of this litigation, the number and complexity of the issues to be analyzed, and the parties' inadequate briefing of the issue addressed here persuade the Court that it is more important to get the issue right than it is to reject Plaintiffs' motion for reconsideration as a mere "second bite" at the proverbial apple. *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). Accordingly, Plaintiffs' motion for reconsideration is GRANTED.

In light of that conclusion, the Court must briefly address the claims of Pennsylvania Plaintiff Greg Theobald, which were previously dismissed in full (albeit with leave to amend to

6

plead out-of-pocket or "lost time" damages, if any). *See In re Gen. Motors*, 2017 WL 2839154, at *10.[3] Theobald owned a 2010 GMC Acadia, which he purchased new from a GMC dealership on June 3, 2010, and which was ultimately subject to the Side Airbag recall. (FACC ¶ 250). Theobald traded the vehicle into a car dealership in August 2013, prior to the recall announcement. (*Id.*). In its motion to dismiss, New GM challenged Theobald's claims on several grounds, only two of which need to be addressed here given the Court's holdings on Pennsylvania law in its prior Opinion and Order. *See In re Gen. Motors*, 2017 WL 2839154, at *32-40. First, New GM argued that Theobald's claims should be dismissed because his vehicle never manifested a Side Airbag defect. (New GM MTD Mem. 16-17 & n.10). But Theobald alleges that, after purchasing his new car, its "airbag service light sometimes came on" when he started his car (although it would "typically" turn off after restarting the car). (FACC ¶ 250). Theobald even inquired about the airbag service light at a New GM dealership, but was told merely that "the car computer did[ not] read the signals properly and he should just restart the car." (*Id.*). As the Court previously held, such allegations suffice, at least for now, to plead manifestation of a defect. *See In re Gen. Motors*, 2017 WL 2839154, at *49 n.30 (reaching the same conclusion under nearly identical facts because "[t]he airbag light coming on is precisely how the defect would manifest itself short of the airbags not deploying in an accident").

Second, New GM challenged Theobald's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1 *et seq.*, on the ground that he failed to allege that New GM knew about the Side Airbag defect in his model vehicle, a 2010 GMC

---

[3] Texas Plaintiff Lisa McClellan also disposed of her vehicle prior to the recalls, but her claims survived the Court's prior decision because she had alleged out-of-pocket costs relating to defect-related repairs. *See id.* Thus, the Court does not address her claims here.

Acadia, prior to his purchase of the car on June 3, 2010. (Docket No. 3578, at 41-42). It is true that the FACC does not contain specific allegations relating to the *2010* GMC Acadia. But it does allege that, from the company's inception, "New GM knew that a technical service bulletin had been issued" for the *2008-2009* GMC Acadia "instructing dealers to repair [the wiring defect]," and that, in late 2009, New GM extended a Customer Satisfaction bulletin for *2008* GMC Acadia models instructing dealers to "re-route or replace" certain wiring connectors. (FACC ¶¶ 740-41). Although close to the line, the Court found similar allegations sufficient to allege knowledge at this stage of the proceedings. *See In re Gen. Motors*, 2017 WL 2839154, at *43 ("The case for New GM's knowledge of the Side Airbag defect prior to Liddy's vehicle purchase in May 2011 is a much closer call. But she alleges that, from its inception, New GM knew about problems in the wiring harness and other components of the airbag wiring dating back to 2008, in other vehicles and the 2009 model of the Saturn Aura XR, her vehicle. Although that barely alleges knowledge of a potential defect that was not disclosed to Liddy herself, it is — as the Court previously found with respect to similar allegations in the TACC — just enough to cross the Rule 9(b) line." (internal quotation marks and citations omitted)). The Court reaches the same conclusion as to Theobald's claim.

Accordingly, Plaintiffs' motion for reconsideration is GRANTED, and the Court's prior Opinion and Order is modified as reflected here. The Clerk of Court is directed to terminate Docket No. 4256.

SO ORDERED.

Date: August 9, 2017
New York, New York

JESSE M. FURMAN
United States District Judge

8